UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| BECKER ALTAYEB,<br><br>              Plaintiff,<br>   v.<br><br>CAROL CHAPDELAINE, CTO PERRY, C/O JOHN DOE 1, C/O JOHN DOE 2, C/O JOHN DOE 3, C/O JOHN DOE 4, C/O JANE DOE 1, C/O JANE DOE 2, C/O JANE DOE 3, C/O JANE DOE 4, NURSE JOHN DOE 1, NURSE JOHN DOE 2, NURSE JOHN DOE 3, NURSE JOHN DOE 4, NURSE JOHN DOE 5, NURSE JANE DOE 1, NURSE JANE DOE 2, NURSE JANE DOE 3, NURSE JANE DOE 4, NURSE JANE DOE 5,<br><br>              Defendants. | 3:16-CV-00067 (CSH)<br><br><br>DECEMBER 16, 2016 |

INITIAL REVIEW ORDER

**HAIGHT, Senior District Judge:**

Plaintiff Becker Altayeb ("Altayeb"), incarcerated and *pro se*, has filed a Complaint [Doc. 1] asserting 42 U.S.C. § 1983 claims and certain state-law claims. The Defendants are Warden Carol Chapdelaine, Correctional Treatment Officer Perry, Correctional Officers John Doe 1-4, Correctional Officers Jane Doe 1-4, and Nurses John/Jane Doe 1-5. All Defendants are named in their individual capacities only.

**I.    STANDARD OF REVIEW**

Under 28 U.S.C. § 1915A, the Court must review prisoner civil complaints against governmental actors and dismiss any portion of the complaint that "is frivolous, malicious, or fails to state a claim upon which relief may be granted" or that "seeks monetary relief from a

defendant who is immune to such relief." 28 U.S.C. § 1915A(b)(1),(2).

Under the Federal Rules of Civil Procedure and Second Circuit precedent, a *pro se* complaint is adequately pled, and thus passes a § 1915A review, if its allegations, liberally construed, could "conceivably give rise to a viable claim." *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005). The Court must accept as true all factual matters alleged in a complaint, although a complaint may not survive dismissal unless its factual recitations "'state a claim for relief that is plausible on its face.'" *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (same). Nevertheless, it is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing rules of solicitude for *pro se* litigants).

The Second Circuit reviews a district court's dismissal of a prisoner's complaint under § 1915A *de novo* and will "reverse a district court's dismissal pursuant to § 1915A whenever a liberal reading of the complaint gives any indication that a valid claim might be stated." *Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (citing *Wynn v. Southward*, 257 F.3d 588, 591-92 (7th Cir. 2001)). Moreover, reiterating this point, in the § 1915A context, the Second Circuit in *Larkin* cited and quoted approvingly from *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 202 (2d Cir. 1999) that it "will not affirm the dismissal of a complaint unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts that would entitle him to relief." *Larkin*, 318 F.3d at 139.

## II.     ALLEGATIONS

Altayeb was transferred to the MacDougall Correctional Institution on April 3, 2014. During the intake interview, Altayeb told correctional staff he was concerned for his personal safety because he was a Muslim/Arab. He repeated these concerns to Warden Chapdelaine when she toured his housing unit. Warden Chapdelaine told Altayeb that he was over-reacting.

During July and August 2014, Altayeb told Correctional Officers John Doe 1-4 and Jane Doe 1-4 that several inmates had threatened him. They called him a terrorist and said that they were going to "get him for what Arabs are doing to our country." Doc. 1 at 5, ¶ 15. Defendants Correctional Officers Doe told Altayeb that he would get what was coming to him. Altayeb relayed these comments and his concerns to Defendant Perry, who told him not to pay attention to the comments and characterized the comments as childishness.

On August 14, 2014, over Altayeb's objection, Defendant Perry moved inmate Williams into Altayeb's cell. Inmate Williams made a derogatory remark toward Altayeb based on his faith, which Defendant Perry heard. Altayeb asked to be removed and Defendant Perry laughed it off. Inmate Williams was a former soldier who had served in Afghanistan, which Defendant Perry also knew. That afternoon, while Altayeb was sleeping, inmate Williams attacked Altayeb and called him a terrorist. Inmate Williams stabbed Altayeb in the chest, broke a fan over his head and hit him in the chest and ribs. Altayeb tried to bang on the cell door for help but Correctional Officers Doe did nothing. After another inmate called Correctional Officers Doe, they eventually came to the cell and deployed a chemical agent. Both inmates were handcuffed.

Altayeb was taken to the medical unit to have his eyes washed and brought to the segregation unit. At the medical unit, Defendants Nurses John/Jane Doe 1-5 refused to treat

Altayeb's stab wounds and other injuries. He received no medical care from August 14, 2014, through August 21, 2014, on which day Altayeb was transferred to Corrigan-Radgowski Correctional Facility. Medical staff there ordered him taken to the hospital for treatment of several broken ribs, a concussion, and infected stab wounds.

Between August 14 and 21, 2014, Altayeb repeatedly requested that Defendants Correctional Officers Doe call the state police so he could file a complaint for a hate crime and assault against inmate Williams. They denied his requests. Correctional Officers Doe also denied Altayeb a legal call to contact his attorney. Warden Chapdelaine also denied him permission to call his lawyer, the state police and "the councilor at the embassy in New York." Doc. 1 at 9, ¶ 35.

### III. DISCUSSION

Altayeb asserts several § 1983 claims based on the following violations: (1) Defendants Chapdelaine, Perry and Correctional Officers Doe were deliberately indifferent to his safety and failed to protect him from harm in violation of the Eighth Amendment; (2) Defendants Nurses Doe were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment; and (3) Defendants Chapdelaine and Correctional Officers Doe violated Altayeb's right to due process and equal protection as well as his First Amendment rights by failing to call the state police and failing to permit him to make legal calls. Alatayeb also asserts state-law claims against Defendants Chapdelaine, Perry and Correctional Officers Doe for negligence in failing to protect him from harm. Altayeb seeks declaratory relief, monetary damages, punitive damages and injunctive relief, but asserts claims against all Defendants only in their individual capacities.

### A.     Injunctive Relief

Altayeb seeks injunctive relief only in the form of an order that the Department of Correction place him on single cell status, remove all disciplinary reports from his file and reinstate his social contact visits. This relief must be denied. First, Altayeb asks the Court to order the Department of Correction to afford him the requested relief. The Department of Correction, a state agency, is not a defendant in this case and, indeed, cannot be sued under section 1983 for injunctive relief. *See Bhatia v. Conn. Dep't of Children & Families (DCF)*, 317 F. App'x 51, 52 (2d Cir. 2009) ("[A] state agency . . . is not susceptible to liability under section 1983 . . . both because such an agency is not a 'person' within the meaning of that statute . . . and because state agencies are entitled to Eleventh Amendment immunity." (citations omitted)) (summary order); *see also Will v. Mich. Dep't of Police*, 491 U.S. 58, 70-71 (1989) (holding that states and its officials are not a person within the meaning of the statute); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (recognizing that state agencies are entitled to Eleventh Amendment immunity). Thus, Altayeb cannot save this claim by simply adding the Department of Corrections as a Defendant.

Moreover, Defendants sued by Altayeb are named in their individual capacities only. "[Injunctive relief against a state official may be recovered only in an official capacity suit, . . . because [a] victory in a personal-capacity action is a victory against the individual defendant rather than against the entity that employs him." *Marsh v. Kirschner*, 31 F. Supp. 2d 79, 80 (D. Conn. 1998) (citations and internal quotation marks omitted). Thus, Altayeb cannot seek injunctive relief against the state officials in their individual capacities. Section 1983 does, however, permit individuals to seek injunctive relief against state actors in their official

capacities. *Id.* However, even if Defendants had been named in their official capacities, Defendants all work at MacDougall Correctional Institution and have no control over Altayeb's confinement at Garner Correctional Institution, his place of confinement when he filed this action. *See Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility." (citing *Young v. Coughlin*, 866 F.2d 567, 568 n.1 (2d Cir. 1989) and *Beyah v. Coughlin*, 789 F.2d 986, 988 (2d Cir. 1986))).

In summary, all requests for injunctive relief are dismissed pursuant to 28 U.S.C. § 1915A(b)(1),(2).

### B.    State-law Negligence Claim

Altayeb asserts a state-law negligence claim against Defendants Chapdelaine, Perry and Corrections Officers Doe.  Altayeb challenges actions (and inaction) taken by Defendants as a breach of a duty of reasonable cared owed to him, resulting in physical and emotional injury to Altayeb.  However, Conn. Gen. Stat. § 4-165(a) provides that "[n]o state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his or her employment."  Therefore, state employees are not "personally liable for their negligent actions performed within the scope of their employment." *Miller v. Egan*, 265 Conn. 301, 319 (2003).  As such, Defendants have statutory immunity from Altayeb's negligence claim. *See Ziemba v. Lynch*, No. 11-974, 2013 WL 5232543, at *8 (D. Conn. Sept. 17, 2013).  Altayeb's state-law negligence claim is dismissed

pursuant to 28 U.S.C. § 1915A(b)(2).[1]

### C. Altayeb's § 1983 Claims

Altayeb alleges a number of § 1983 claims related to the alleged assault, his injuries and the subsequent treatment he received by Defendants. The Court will address each claim in turn.

1.  *Eighth Amendment Claims*

Altayeb alleges that Defendants Chapdelaine, Perry and Correctional Officers Doe were deliberately indifferent to his safety and failed to protect him from harm in violation of the Eighth Amendment. To state such a claim, Altayeb must "allege facts showing that he was incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with deliberate indifference to that risk and [his] safety." *See Medina v. Black*, No. 15-1371, 2016 WL 386030, at *5 (D. Conn. Feb. 1, 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). Defendants must have known of and disregarded "an excessive risk of harm to the plaintiff's health and safety," been aware of the facts from which the inference can be drawn that such a substantial risk of harm existed, and actually drawn that inference. *Id.* (citing *Farmer*, 511 U.S. at 837).

In assessing whether Altayeb faced an excessive risk of serious harm, this Court must "look at the 'facts and circumstances of which the official was aware at the time he acted or failed to act.'" *Hartry v. City of Suffolk*, 755 F. Supp. 2d 422, 436 (E.D.N.Y. 2010) (quoting

---

[1] Although Altayeb mentions at the beginning of his Complaint state-law assault and battery claims against Defendants, throughout the rest of the Complaint he fails to assert any facts supporting such claims against these Defendants and does not attempt to state such a claim. The only assault or battery referenced in the complaint is that committed by inmate Williams, who is not named as a Defendant. To the extent he is asserting such claims, they are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

*Heisler v. Kralik*, 981 F. Supp. 830, 836 (S.D.N.Y. 1997)).  The focus is "on the existence of a substantial risk of serious harm, rather than the actual injuries suffered in an attack." *Medina*, 2016 WL 386030, at *5 (citing *Farmer*, 511 U.S. at 837).  In fact, an inmate need not await injury to seek to remedy the unsafe conditions.  *Id.* (citing *Farmer*, 511 U.S. at 845).  "[W]hen a prisoner is subjected to specific threats from another inmate, and there are indication[s] that the threat will be carried out, the failure of prison officials to act may give rise to a deliberate indifference claim."  *Hartry*, 755 F. Supp. 2d at 436 (quoting *Walker v. Shaw*, No. 08-10043, 2010 WL 2541711, at *9 (S.D.N.Y. June 23, 2010)) (internal quotation marks omitted).

  Here, Altayeb alleges that he informed Defendants, including the supervisory Defendants, several times that he was worried about his safety as a Muslim/Arab person, that inmates were calling him a terrorist and stated an intention to attack him, and that he should not be housed with a soldier that had fought in Afghanistan.  Defendants brushed aside and minimized Altayeb's concerns and certain Defendants are alleged to have predicted that Altayeb would get was coming to him, thereby seeming to approve the inmates' threats.  He was then brutally attacked by his cellmate and certain Defendants ignored Altayeb's pleas allowing the attack to continue longer.  These allegations are enough to plead that Defendants were aware of, and disregarded, an excessive risk of serious harm to Altayeb's health and safety.  Thus, he has stated cognizable claims for failure to protect and deliberate indifference to his safety by these Defendants.

  Altayeb also alleges that Defendants Nurses Doe were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.  Deliberate indifference by prison officials or medical staff to a prisoner's serious medical needs also constitutes cruel and unusual

punishment in violation of the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Jarecke v. Hensley*, 552 F. Supp. 2d 261, 264 (D. Conn. 2008); *see also Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) ("The Cruel and Unusual Punishments Clause of the Eighth Amendment imposes a duty upon prison officials to ensure that inmates receive adequate medical care." (citing *Farmer*, 511 U.S. at 832, 844)).  To prevail on such a claim, Altayeb must demonstrate that the alleged deprivation of adequate medical care was "sufficiently serious" and that the Nurse Defendants acted with a "sufficiently culpable state of mind" by acting with "deliberate indifference to inmate health."  *Salahuddin*, 467 F.3d at 279-80.

To determine whether the alleged deprivation is "sufficiently serious," courts must consider (1) whether the prisoner was actually deprived of adequate medical care when providing reasonable care is all that is required, and (2) how the medical care was inadequate, which requires also examining what harm will likely be caused or has been caused.  *Id.* at 280. Only deprivations that deny "the minimal civilized measure of life necessities" are "sufficiently serious."  *Id.* at 279 (citations and internal quotation marks omitted).  Regarding the Nurse Defendants' state of mind, "[d]eliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law," requiring officials to "act or fail to act while actually aware of a substantial risk that serious inmate harm will result."  *Id.* at 280 (citing *Farmer*, 511 U.S. at 836-37, 839-40).

Here, Altayeb alleges that the Nurse Defendants, aware of the brutal attack on Altayeb, ignored his substantial injuries from the attack, failing altogether to treat him for any injury other than that to his eyes from the deploying of the chemical agent.  The Nurse Defendants, as alleged, were aware of a serious medical need, and consciously and intentionally disregarded

9

that need.  As a result, Altayeb was not treated for his injuries until he was transferred to another correctional institution at which point he was sent directly to a hospital.  At the hospital, he was finally treated for his injuries related to the brutal attack, which included wounds that had become infected due to his lack of prior treatment.  Thus, Altayeb has stated cognizable claims for deliberate indifference to his medical needs by these Nurse Defendants.

2. *Claims Related to Altayeb's Inability to Call Certain Persons*

Altayeb alleges that certain Defendants, including Defendant Chapdelaine, refused to allow him access to a telephone to call his lawyer, the Connecticut State Police, and the councilor at the embassy in New York, which denied him due process and equal protection.  Regarding his claim that he was not allowed to contact his lawyer, "[p]risoners . . . 'have a constitutional right of access to the courts.'" *Bourdon v. Loughren*, 386 F.3d 88, 92 (2d Cir. 2004) (quoting *Bounds v. Smith*, 430 U.S. 817, 821 (1977)).  Such a right has been grounded, at least as relevant to prisoners, in the constitutional guarantees of equal protection and due process.  *Id.*; *see also Pino v. Dalsheim*, 558 F. Supp. 673, 674-75 (S.D.N.Y. 1983) ("The Supreme Court has consistently recognized that as a corollary to the Fourteenth Amendment's guarantee of due process of law, prisoners must be afforded reasonable access to the courts in order to . . . seek redress for violations of their constitutional rights." (citing *Procunier v. Martinez*, 416 U.S. 396, 419 (1974), *overruled in part on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989))).

Any regulations or practices by a state that "unjustifiably obstruct" this "right of access to the courts are invalid." *Pino*, 558 F. Supp. at 674-75 (quoting *Martinez*, 416 U.S. at 419) (internal quoatation marks omitted).  However, "[t]o establish a constitutional violation based on

denial of access to the courts, a plaintiff must show that the defendant's conduct was deliberate and malicious, and that the defendant's actions resulted in an actual injury to the plaintiff." *Banks v. Cnty. of Westchester*, 168 F. Supp. 3d 682, 692 (S.D.N.Y. 2016) (quoting *Bellezza v. Holland*, 730 F. Supp. 2d 311, 314 (S.D.N.Y. 2010) (internal quotation marks omitted). Such an injury requires that "the defendant's conduct *did, in fact, hinder* the efforts of the plaintiff to pursue a legal claim." *Id.* (citing *Bellezza*, 730 F. Supp. 2d at 314-15) (emphasis in original).

Here, Altayeb alleges that for, at most, a period of one week certain Defendants prevented him from contacting his lawyer. He does not allege how that hindered him from ultimately filing the instant action or how it resulted in injury to him. Moreover, courts have consistently found that "[m]ere delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation." *Banks*, 168 F. Supp. 3d at 693 (quoting *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003)) (internal quotation marks omitted). Thus, absent any allegation that the conduct of certain Defendants in this seven-day period caused harm, Altayeb's Complaint cannot sustain an action under § 1983 on that ground.

Regarding Altayeb's inability to contact the state police, "a victim of allegedly criminal conduct is not entitled to a criminal investigation or the prosecution of the alleged perpetrator of the crime." *Johnson v. Ruiz*, No. 11-542, 2012 WL 90159, at *4 (D. Conn. Jan. 10, 2012) (collecting cases). The ability to have a criminal complaint filed and have a prosecution result as a victim of the alleged crime is not a constitutionally protected activity. Moreover, a victim has "no constitutionally protected right to a proper investigation" of any claims filed. *Id.* (citing *Lewis v. Gallivan*, 315 F. Supp. 3d 313, 316-17 (W.D.N.Y. 2004) and *Santossio v. City of Bridgeport*, No. 01-1460, 2004 WL 2381559, at *4 (D. Conn. Sept. 28, 2004)).

11

Altayeb's allegation that certain Defendants did not allow him to contact the state police to press charges against inmate Williams does not state a constitutional claim. *See id.* at *5. Altayeb had no constitutional right to an investigation or to have inmate Williams prosecuted, thus, his allegations regarding the failure to permit him to press charges fails to state a claim upon which relief may be granted.

Finally, regarding Altayeb's claim that he was prevented from contacting the "councilor at the embassy in New York," it is unclear from his Complaint what embassy Altayeb was trying to contact, why Altayeb would need to contact an embassy or what purpose Altayeb had in contacting the embassy. Although this district has recognized that communications with foreign embassies directly concern a prisoner's incarceration and that a foreign national "surely has a right to communicate with his government in order to persuade it to take some official action on his behalf," *Stover v. Carlson*, 413 F. Supp. 719, 723 (D. Conn. 1976), Altayeb does not allege that he is a foreign national entitled to so communicate with his government or even which embassy he was seeking to speak with about the assault. In addition, Altayeb does not allege any harm or injury resulting from the seven day period in which he could not so communicate with the embassy. Given the lack of details and allegations concerning this cursory claim, Altayeb has failed to state a claim upon which relief may be granted on this basis.

To the extent Altayeb is asserting any First Amendment claims on the denial of his requests to call his lawyer, the Connecticut State Police or the embassy, he also fails to state any claims upon which relief can be granted. Prisoners have no constitutional right to unlimited telephone use. *See Pitsley v. Ricks*, No. 96-0372, 2000 WL 362023, at *4 (N.D.N.Y. March 31, 2000) ("Courts considering prison telephone restrictions have agreed that an inmate has no right

to unlimited telephone use." (collecting cases)). Restrictions on such use are generally upheld if the affected inmate has an alternate means of communicating with the outside world. *Id.* at \*5.

Altayeb does not allege (and it does not appear from his Complaint) that he was without any other means of contacting his lawyer, the Connecticut State Police, or the embassy such as by letter. Thus, although Altayeb may have been limited in his ability to use the telephone, he has not alleged facts from which this Court can infer that he was *entirely* deprived of his right to communicate with the outside world in violation of the First Amendment. In addition, to state a violation of his First Amendment speech rights, Altayeb is required to show that he suffered prejudice or actual injury. *Clay v. Schwebler*, No. 13-1314, 2015 WL 6438919, at \*4-5 (N.D.N.Y. Oct. 22, 2015) (citing *Pitsley*, 2000 WL 362023, at \*3). As explained above, Altayeb has failed to do so with the allegations in his Complaint.

Altayeb's claims related to the denial of his requests to contact his lawyer, the Connecticut State Police, and an unspecified embassy are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### D.     Leave to Amend

Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)) (internal quotation marks omitted). However, where "[t]he problem with [the plaintiff's] causes of action is substantive; better pleading will not cure it." *Id.* The Court may deny a plaintiff leave to amend such claims as "[r]epleading would thus be futile" and "[s]uch a futile request to

replead should be denied" as instructed by the Second Circuit.  *Id.* (citing *Hunt v. Alliance N. Am. Gov't Income Trust*, 159 F.3d 723, 728 (2d Cir. 1998)).

Here, the problems with Altayeb's claims for injunctive relief, Altayeb's state-law claims and his § 1983 claims based on violations of his constitutional rights related to his inability to call the Connecticut State Police are substantive.  As such, repleading them would be futile.  These claims are dismissed and Altayeb may not replead them.

However, the Court will grant Altayeb leave to amend his § 1983 claims based on violations of his constitutional rights related to his inability to call his lawyer and the embassy in an amended complaint based on the guidance provided in this Initial Review.  Altayeb could reasonably assert such claims if he can cure the deficiencies noted in this Ruling.

Altayeb is advised that, if filed, the amended complaint is intended to completely replace the complaint in this action, and thus it "renders [any prior complaint] of no legal effect."  *See Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977).  Therefore, Altayeb's amended complaint must include all of the allegations against each of the Defendants against whom the case is going forward so that the amended complaint may stand alone as the sole complaint that defendants must answer.

## IV.   ORDERS

(1)   All requests for injunctive relief, Altayeb's state-law claims, and Altayeb's 42 U.S.C. § 1983 claims related to his ability to make phone calls to his lawyer, the Connecticut State Police, and an embassy are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b).  Altayeb will have **thirty (30) days** to file an Amended Complaint asserting 42 U.S.C. § 1983 claims related to his ability to make phone calls to his lawyer and an embassy in accordance with this Initial

Review.  Otherwise, the case will proceed on the remaining 42 U.S.C. § 1983 claims based upon Eighth Amendment violations against Defendants in their individual capacities.

(2)     The Clerk shall verify the current work address of Defendants Chapdelaine and Perry with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet to each Defendant at the confirmed address within **twenty-one (21) days** of this Order, and report to the Court on the status of the waiver request on the thirty-fifth (35) day after mailing.  If any Defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on him in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3)     The Clerk shall send written notice to Plaintiff of the status of this action, along with a copy of this Order.

(4)     The Clerk shall send a courtesy copy of the Complaint and this Ruling and Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5)     The Defendants shall file their response to the Complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver form is sent.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above.  They also may include any and all additional defenses permitted by the Federal Rules.

(6)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order.  Discovery requests need not be filed with the court.

(7)     All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(8)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9)     If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that the plaintiff MUST notify the court.  Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated.  Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Plaintiff should also notify Defendant or the attorney for Defendant of his new address.

(10)    Plaintiff is hereby notified that the U.S. Marshal cannot serve the Complaint on John Doe 1-4, Jane Doe 1-4, and Nurse John/Jane Doe 1-5 until he identifies these Defendants by name.  Plaintiff will have **ninety (90) days** from the date of this order to conduct discovery and file a notice identifying these Defendants by name.  If Plaintiff fails to file a notice within the time specified, the claims against all Doe Defendants will be dismissed without further notice from the Court pursuant to Fed. R. Civ. P. 4(m) and the action will proceed only on the claims against Defendants Chapdelaine and Perry.

**It is SO ORDERED.**

**Dated: New Haven, Connecticut
        December 16, 2016**

                                                 */s/ Charles S. Haight, Jr.*
                                                **CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE**